LOTTINGER, Judge.
This is a suit wherein plaintiff, Elmer O. Fortenberry, seeks to recover from Roy K. Mitchell and Anthony St. Pierre the sum of $245.66 with 5% interest from May 31, 1954. The petition recites that the amount sued for is the balance of the purchase price for piling and timber sold by the plaintiff to the defendants. It is set out that on May 31, 1954, the defendant, Roy K. Mitchell, delivered to the plaintiff a check for the sum of $596 drawn on the Citizens National Bank in Hammond, Louisiana, which was ostensibly in payment for the value of timber and piling removed from plaintiff’s property. This check was dishonored upon presentation to the bank because of insufficient funds. The further allegation is made that on or about July 3, 1954, the defendants delivered to the plaintiff two checks drawn by the defendant, Anthony St. Pierre, one for the sum of $210.34 and the other for $140 or a total of $350.34 on account of the indebtedness, leaving a balance of $245.66, which is the amount sued for.
The defendant, Roy K. Mitchell, did not appear or file an answer or any other pleadings. The defendant, Anthony St. Pierre, answered the plaintiff’s petition denying that he had purchased any timber or piling from the plaintiff, but admitting, however, that he had delivered the two checks described in the plaintiff’s petition to the latter, not for any indebtedness due by him to the plaintiff, but for the account of the said Roy K. Mitchell. The further allegation is made in the answer that the relationship between St. Pierre and Mitchell was solely that of a purchaser of piling which Mitchell would deliver to St. Pierre from time to time.
As Mitchell made no appearance, a default judgment was rendered against him. After trial of the case on the merits, judgment was also rendered against the defendant, St. Pierre, and the matter is now before us on an appeal taken by the latter.
The trial judge rendered written reasons for judgment in this matter wherein he concluded as follows: “The court thinks that all the facts in the case would lead one to believe that Mitchell and St. Pierre were working together and that St. Pierre, having received the poles and piling, and having paid for a portion of them, is liable for the balance. The court does not believe that St. Pierre would have committed himself as far as he did in this matter unless there was a joint venture between him and Mitchell and Mitchell was acting as his agent, and he had held him out to the plaintiff as such.”
We regretfully disagree with the findings of the trial judge. The defendant, St. Pierre, called on cross examination by counsel for plaintiff, testified that he was engaged in the timber and pole business; that he knew Roy K. Mitchell (the other defendant) and that he had had dealings with him for some twelve to eighteen months. He admitted that his machinery was used in the operation but testified that he was paid by Mitchell by the foot to do the work and that he was actually buying lumber from Mitchell pursuant to an order together with specifications. He stated further that he personally owes the plaintiff nothing because he has had no dealings *731 with him whatsoever, and in fact had never seen the plaintiff until Mitchell’s check was returned by the bank.
On direct examination, the defendant testified very definitely that he did not buy timber from the plaintiff and that Mitchell was not employed by him. He stated that he was in the piling business and that he would buy piling from various persons, paying for same by the lineal foot. His testimony was that this was exactly the type of deal that he had with Mitchell. He went further and said that after he had agreed to purchase the piling from Mitchell, that the latter came to him stating that he did not have the proper equipment to remove the timber and that when that occurred, it was agreed that St. Pierre’s tractor would go over and bunch, load and haul it for a certain price per lineal foot. He stated that he did not supervise the cutting of the timber and repeated that he had never seen the plaintiff before the “trouble with Mitchell came up.” This defendant went on and stated that he had never authorized Mitchell to represent him in the purchase of timber but the latter part was on his own account with a view of manufacturing it and selling it to him as a manufactured product. This defendant’s version of what transpired is that the plaintiff came to him after Mitchell’s check was returned and asked him “to help him out to get his money out of Mitchell.” This defendant stated that he told the plaintiff that he would do what he could to get the money, but that he did not promise to pay him anything out of his own funds and that what was actually paid to the plaintiff by him came from monies which were due Mitchell by him. It was brought out on cross examination that before handing these two checks to the plaintiff, he saw Mitchell and asked him if he would agree to having him follow this course of procedure and the latter assented thereto.
The plaintiff stated that he owns the land from which the timber and piling was cut and that he saw the defendant St. Pierre’s trucks thereon. He stated that when the deal was made to sell the timber that he, his neighbor, Mr. Plughes and Mitchell were present. He stated that Mr. St. Pierre was not there and that at that time he had never seen him. It is obvious from a reading of this man’s testimony that no deal was made with the defendant, St. Pierre, for the most that he could say was that the latter had been recommended to him by his neighbor. He stated that when it developed that Mitchell’s check was worthless he went to the defendant St. Pierre and asked him to help out.
The plaintiff’s neighbor, a Mr. Elvin Hughes, testified, stating that he had sold piling to Mitchell and that he had been paid for same by Mitchell with the exception of the last check which had been paid by the defendant, St. Pierre. He corroborated the plaintiff’s testimony to the effect that he "recommended” the two defendants to the plaintiff. He also stated that when Mitchell’s check was returned, that he accompanied the plaintiff to see St. Pierre and that the latter did not promise to pay the amount due but said that he would see that the plaintiff got his money. He stated very definitely that when he made his deal to sell his piling, that it was made with Mitchell, not with the defendant.
The above and foregoing encompasses the testimony which was introduced. While it is with reluctance that we reverse a trial judge’s finding on a question of fact, we feel compelled to do so in the instant case. The petition recites that the petitioner sold and delivered to the defendants the piling and timber for which he was not paid in full. From the above and foregoing, it is obvious that there is nothing to show that this piling was sold by this plaintiff to the defendant, St. Pierre. Nor can we find any evidence sufficient to warrant our concluding that Mitchell was either the agent or employee of St. Pierre. The latter testified without equivocation that he purchased piling as a product from Mitchell and while it is true that his equipment was used in the operation conducted by Mitchell on the plaintiff’s land, he stated that this was done for a price. We are unable to conclude from *732 the mere fact that he purchased piling from Mitchell, the fact of Mitchell’s using his equipment or the whole surrounding circumstances that Mitchell was either an agent or employee of the defendant, St. Pierre, or that there was any such relationship existing between the two men which would justify holding St. Pierre liable in solido with Mitchell.
For the reasons assigned, the judgment appealed from is reversed insofar as the defendant Anthony St. Pierre is concerned and it is ordered, adjudged and decreed that the plaintiff’s suit as to the latter be dismissed at his costs.
Judgment reversed.